**LEWIS AND EUGENIA VAN WEZEL FOUNDATION, INC., et al.,**
**Plaintiffs,**

v.

**GUERDON INDUSTRIES, INC.,**
**Defendant.**

**Nos. 70 Civ. 5572–5576.**

United States District Court,
S. D. New York.

July 7, 1971.

Rosenman, Colin, Kaye, Petschex, Freund & Emil, by Gerald Walpin, New York City, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, by Edward Costikyan, New York City, for defendant.

OPINION

TYLER, District Judge.

In an earlier memorandum in these cases filed on April 22, 1971, the parties were directed to undergo discovery on the issue of personal jurisdiction of the defendant Guerdon Industries, Inc. ("Guerdon") under CPLR 302 and Rule 4, F.R.Civ.P. In the same memorandum, the court indicated that decision on the

plaintiffs' motion for summary judgment would be reserved pending resolution of the jurisdiction question. The parties have completed their discovery on jurisdiction and earlier this month rendered additional affidavits, documents and briefs to the court on this question. Both sides agree that the jurisdictional question is ripe for determination.

As the previous memorandum pointed out, the essential question raised here is whether or not plaintiffs' claims based on the promissory notes are claims or causes of action "arising from any of the acts * * *" enumerated in Section 302 of the New York CPLR. In essence, plaintiffs argue that the original notes which had considerable ties with New York in their issuance, etc. (see April 22nd memorandum) must be looked to to establish that Guerdon transacted business within this state. Conversely, defendant strenuously urges, particularly upon completion of discovery, that the cancellation of the original notes issued in 1959 and the issuance of new notes in subsequent years which are the subject of this suit raise quite different considerations and thus cannot be said to be claims arising out of the transaction of any business in this jurisdiction by Guerdon.

The essential facts as established by further discovery can be summarized as follows. For the purpose of purchasing several Michigan companies, chief of which was Guerdon, a number of partners, employees and clients of Ladenburg, Thalmann & Co. ("Ladenburg") gathered the necessary capital and formed Trailer Homes, Inc., a Delaware corporation. This group basically operated from Ladenburg's office in downtown New York City. They employed Ladenburg's New York attorneys and opened a bank account here at the Irving Trust Company.

In order to raise the capital necessary to purchase Guerdon, $2,500,000 was obtained by the issuance of 6% notes. One such note was issued to Ladenburg in the amount of $1,250,000. A second note for $1,000,000 was issued to Red Canyon Corporation, a Ladenburg client. A third note was issued to Lionel Pincus, a Ladenburg employee, in the sum of $150,000. The fourth note was issued to another Ladenburg client, Lewis Van Wezel, in the sum of $100,000. These were the so-called 1959 notes. They were signed in New York on behalf of Trailer Homes by one Harry B. Lake and Albin J. May. Lake was a general partner of Ladenburg and owner of the single largest block of shares of Trailer Homes. May was a Ladenburg employee who had become Trailer's secretary. As previously noted in the April 22 memorandum, the 1959 notes were payable in New York and contained a clause subordinating them to an Irving Trust Company loan. Interest payments were made on these notes by checks drawn on the Irving Trust bank account, but the checks themselves were drawn in Michigan, the state which appears to be the principal place of Guerdon's business operations.

Upon the issuance of these notes and the gathering of the necessary capital, the group purchased the Michigan companies on August 4, 1959 by means of stock acquisition. The corporate name of Trailer Homes was thereupon changed to Guerdon Industries, Inc. The president of Guerdon maintained his office in Michigan. The secretary of Guerdon, however, maintained his office in New York until 1966. Meetings of the board of directors have been held on numerous occasions in New York.

As all parties agree, none of the 1959 notes exist as such today. Brief histories of the successor notes now being sued upon in these five cases follow.

*The de St. Phalle, Ladenburg and Walter Saunders Notes.*

As articulated by defense counsel, the three notes above-described "are two generations removed from the 1959 notes". The 1959 Ladenburg note was cancelled in 1965, and thereupon two notes were issued, one of which was payable to Ladenburg. This 1965 Laden-

burg note in turn was cancelled in 1968, as a result of which a series of new notes were issued, three of which are now being sued upon.

The 1968 notes were issued by Guerdon in its Vicksburg, Mississippi office in response to a request received by mail from New York to issue "new notes" (Exhibit C, Rosenthal deposition). Signing these notes were one Arnold, a vice-president, and Schaaf, the secretary of Guerdon. Neither of these men had any office or other base in New York.

### The Merfris S.A. Note.

This note is one step removed from the 1959 notes of original issue. Briefly, the aforementioned Red Canyon note was cancelled in late 1959. Plaintiff Merfris has not been able to offer evidence as to where or by whom it was cancelled. The new note upon which suit is here brought was also issued in 1959. Specifically, it was executed by Mr. Wolfe, President and Mr. May, Secretary, of Guerdon. Plaintiffs' witness Rosenthal assumed that Mr. May signed the note in New York because he, Wolfe, "was in New York periodically". Rosenthal also assumed on his deposition that Mr. May signed the note in New York because he, Rosenthal, did not believe that May ever went to Michigan.

### The Lewis and Eugenia Van Wezel Foundation, Inc. Note.

The 1959 note issued to Lewis Van Wezel was cancelled in 1964. There is no evidence as to where or by whom this original note was cancelled. The new note in suit was issued in 1964. It was signed by Mr. Hotsenpiller, President, and Mr. Heimerdinger, Secretary. Heimerdinger has testified that though not certain of the fact, he believes that Hotsenpiller and he signed the note in New York. He could not say, however, where the 1959 note was cancelled, nor did he have any explanation for the fact that there was a slip attached to the 1959 note indicating that Ladenburg had received the 1964 note from Guerdon In-

dustries, Inc. After his testimony, Heimerdinger submitted to the court an affidavit indicating that he found a "cancelled" stamp in a drawer at Ladenburg's New York office; from this he concludes that the note here in question must have been cancelled here in New York City.

■■ After reviewing the evidence, such as it is, I reject my earlier statement that "(I)t is tempting to surmise * * * that defendant may not be able to sustain its position as a matter of law.";[1] put affirmatively, I am unpersuaded by the stoutly pressed arguments of plaintiffs that the fact that the cancelled 1959 notes were made in New York is sufficient to confirm long-arm jurisdiction. In simple fact, the claims here in suit arise from defendant's acts in making the notes here sued upon. From all of the evidence now available—and it does not appear that further evidence on the point will be gleaned from additional discovery—I find that three of the notes were clearly made outside of the State of New York and that as to the remaining two notes, plaintiffs' proof that they were made within the state lacks specificity or conviction.

Furthermore, it does not take excessively close analysis to determine that the plaintiffs' cited authorities for the proposition that this court must look to the original notes in order to determine jurisdiction are clearly distinguishable. Counsel for plaintiffs misapprehend the crucial thrust of the decision of this court in Northland Paper Company v. Mohawk Tablet Company wherein it was said, "the conclusion that there is jurisdiction is premised chiefly upon the fact that the critical part of the negotiations of this contract was conducted in New York." 271 F.Supp. 763, at 769 (1967). In other words, it is just not true that *Northland Paper* is firm authority for the proposition that one must always return to the original contract document or piece of commercial paper in order to establish jurisdiction under the long-arm

---

[1]. See p. 6 of the April 22 memorandum.

**1352**

statute. It is true that this court discussed a modified contract growing out of the crucial negotiations and rejected defendant's argument that the place of signing that contract somehow changed the facts of the negotiations leading to it. But that is a far different problem than is posed by the facts in this case. In general, the same may be said with regard to distinguishing features between this case and the other authority, Pacer International Corp. v. Otter Distributing Co., 51 Misc.2d 737, 273 N.Y.S. 2d 829 (Sup.Ct., N.Y.Co.1966), upon which plaintiffs' counsel rely. In *Pacer*, suit was based upon a guarantee executed in New York. The contract guaranteed was between two New York corporations. Understandably, the Supreme Court of New York sustained jurisdiction even though a subsequent instrument purporting to "continue" the basic guarantee was executed in Pennsylvania.

 The only certain contact in New York in regard to the replacement notes here in suit is the conceded fact that these notes are payable in New York. To date, however, the New York courts have rejected the view that demand obligations which are payable in New York without more are sufficient to establish jurisdiction. Wirth v. Prenyl, S.A., 29 A.D.2d 373, 288 N.Y.S.2d 377 (1st Dept. 1968); Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co., 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dept. 1967). In three cases here—Thibaut de St. Phalle, Ladenburg and Saunders—it seems clear that the essential facts amount to no more than that the notes were made outside of New York and mailed to the payees' agent here and of course are payable in New York. As indicated, the New York courts do not regard these contacts sufficient to confer jurisdiction.

In regard to the Merfris note, it must be conceded that this replacement note possibly was made in New York. Unfortunately, there is no clear proof that this was so. Perhaps it can be said that plaintiffs have made their best case to the effect that the Van Wezel Founda-

tion note was actually made in this state. Again, however, there is ambiguity on the record. Hence I conclude that plaintiffs have not and cannot establish jurisdiction under CPLR 302 by a preponderance of the evidence. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, at 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); see also United States v. Montreal Trust Company, 358 F.2d 239, at 242, fn. 4 (2d Cir. 1966).

The motions to dismiss these cases for lack of jurisdiction under CPLR 302 are hereby granted. Judgment should be entered accordingly. It is so ordered.