HUBBARD, WESTERVELT & MOTTELAY, INC., Respondent, v. HARSH BUILDING CO., Appellant.

First Department, November 30, 1967.

*Mendel Zucker* for appellant.

*Charles H. Miller* (*Michael E. Geltner* with him on the brief; *Marshall, Bratter, Greene, Allison & Tucker*, attorneys), for respondent.

CAPOZZOLI, J. This suit is based on a promissory note which was executed and delivered by the defendant-appellant in Phoenix, Arizona, in the amount of $25,194, payable to plaintiff, in New York, in seven installments. The note was given for services rendered by plaintiff in obtaining a mortgage commitment from a bank, located in New York, to finance the purchase and development of property in Arizona.

The plaintiff is a New York corporation. Defendant is an Oregon corporation, has no place of business in New York and is not authorized to do business here. The court below held the service of process on the defendant outside of New York State was valid and that jurisdiction over it was acquired on the theory that, since the payment of the note was required to be made in New York, and some payments were already made, this activity constituted transacting business in this State within CPLR 302 (subd. [a], par. 1).

It must be remembered that, while under the Federal decisions of *International Shoe Co.* v. *Washington* (326 U. S. 310) and *McGee* v. *International Life Ins. Co.* (355 U. S. 220) a good deal more latitude is given to the States in securing jurisdiction over nonresidents under certain conditions, nevertheless, the fact still remains that certain minimal contacts must exist within the State exercising jurisdiction, so that maintenance of a suit here does not offend traditional notions of fair play and substantial justice. (*Longines-Wittnauer Watch Co.* v. *Barnes & Reinecke*, 15 N Y 2d 443.)

In the last cited case, at pages 451 to 452 of the opinion, the court said: " But this does not mean, the Supreme Court made clear in the later case of *Hanson* v. *Denckla* (357 U. S. 235), that all restrictions on a state court's exercise of personal jurisdiction over foreign corporations have come to an end. * * * the court went on to caution that ' it is a mistake to assume that this

trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts '. * * * ' The unilateral activity of those who claim some relationship with a nonresident defendant ' * * * ' cannot satisfy the requirement of contact with the forum State. * * * [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' ''

In *McKee Elec. Co.,* v. *Rauland-Borg Corp.* (20 N Y 2d 377, 381–382) the court said: '' There is no fixed standard by which to measure the minimal contacts required to sustain jurisdiction under the provisions of CPLR 302 (subd. [a], par. 1). However, it seems to us the contacts here, rather than being minimal, were so infinitesmal, both in light of *Hanson* v. *Denckla* (357 U. S. 235) and *Longines-Wittnauer Watch Co.,* v. *Barnes & Reinecke* (15 N Y 2d 443), that jurisdiction of the New York courts cannot be sustained. Otherwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts.''

A comparison of the *McKee Elec. Co.* v. *Rauland-Borg Corp.* case (*supra*) with the case at bar readily discloses that there were far more contacts with New York in the former case than there are in the case at bar. In the former case the defendant had a distributorship agreement executed or negotiated by one of its agents in New York which was renewed annually for about eight years. The defendant shipped goods into the State for the purposes of sale by its distributor in New York to New York customers, for use in New York, and, when the difficulties arose which finally led to the suit, the defendant sent the manager of one of its divisions into the State in order to solve the problem and he was accompanied by the defendant's northeast sales representatives, who later made some additional visits to New York in his attempt to arrive at a peaceful solution. Despite all of this the court refused to sustain jurisdiction under the statute above mentioned.

In the case at bar nothing like the activities of defendant in the *McKee* case are present. No business whatever was transacted by the defendant within New York and no purposeful act was committed by it in the State. The note sued upon was executed and delivered in Arizona.

In *Kramer* v. *Vogl* (17 N Y 2d 27) defendants never came into New York, but sold and sent goods into the State pursuant to an order sent from within the State. They made arrangements

to sell the goods F. O. B. Austria. They carried on no sales, promotion or advertising . activities in this State. At pages 31 to 32 the court said:

" The issue boils down to whether the phrase ' transacts any business within the state ' covers the situation of a nonresident who never comes into New York State but who sells and sends goods into the State pursuant to an order sent from within the State. * * * All we know is that these defendants in Austria made arrangements to sell merchandise f. o. b. to the local distributor. Defendants themselves carried on no sales, promotion or advertising activities in this State. * * *

" Despite the comparative liberality with which we have construed the first paragraph of subdivision (a) of 302 we do not think that the facts displayed here show the case within that paragraph. The cause of action here sued upon cannot be said to have arisen out of any transaction of business in the State."

In *Katz & Son Billiard Prods.* v. *Correale & Sons* (26 A D 2d 52, 53) we said: " In accordance with the practice of the parties extending over many years, one of defendant's employees in New Jersey had ordered the goods by telephone, and plaintiff had shipped them to New Jersey by common carrier F. O. B. its factory in New York City. Payment in the past presumably was made by remittance from New Jersey. These contacts with this State do not appear to constitute ' purposeful acts ' here sufficient to sustain jurisdiction (citing cases)."

We are not unmindful of the decision in *Benedict Corp.* v. *Epstein* (47 Misc 2d 316) cited in the dissenting opinion, in which it was held that, although a note was executed in Massachusetts, the cause of action arose out of a default in payment in New York and, therefore, the defendant transacted business here within the meaning of CPLR 302 (subd. [a], par. 1). However, this decision is not supported by the weight of authority.

The other case cited in the dissent, *Banco Espanol De Credito* v. *Du Pont* (24 A D 2d 445) presents a factual situation clearly distinguishable from the one in the case at bar. In *Banco Espanol De Credito*, notes were executed by the defendant as an accommodation indorser, in Delaware, to make available his credit in the production of motion pictures which constituted the enterprise or the business of two limited partnerships existing under the laws of New York and in which Du Pont was a special partner. It must be noted that the partnership, while engaged in making motion pictures in Spain, had its offices in New York and transacted business here. This is glaringly different

from a situation where a defendant executes a note outside of New York State, makes it payable within this State to accommodate the payee and that is his only activity in or with New York State. (Cf. *Franklin Nat. Bank* v. *Chambers*, 54 Misc 2d 635.)

As was aptly stated by the court in *McKee Elec. Co.* v. *Rauland-Borg Corp.* (*supra*, p. 383): "In our enthusiasm to implement the reach of the long-arm statute (CPLR 302), we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their preeminent headquarters, or where they conduct substantial general business activities. Only in a rare case should they be compelled to answer a suit in a jurisdiction with which they have the barest of contact."

It is well to remember the language used by our court in *Millner Co* v. *Noudar, Lda.* (24 A D 2d 326, 329): "Enthusiasm for extending jurisdiction over foreign persons in foreign lands in limited contact cases, however, may well be tempered by the expectation that the same rule will be reciprocally applied in remote countries against our citizens here."

Accordingly, the orders and judgment appealed from should be reversed, on the law and defendant's motion to dismiss for lack of jurisdiction should be granted, with costs and disbursements to appellant.

McGIVERN, J. (dissenting). I dissent and would affirm. The defendant corporation was party to sufficient purposeful activity in New York relating to the matter in suit, to bring it well within the arm of CPLR 302 (subd. [a], par. 1).

By its terms the note in suit was made payable in New York. Indeed, four payments have already been made in New York, pursuant to its terms. And the default, on which the case is based, occurred here. Plaintiff is a New York corporation, and the note on which this suit is based was given for services rendered, at least in part here. These services involved obtaining of a mortgage commitment from a local New York savings bank in connection with a housing development in Arizona the obtainment of which facilitated defendant's purchase of the property.

The totality of all these contacts has the effect of subjecting defendant to the jurisdiction of the courts of this State. (*Banco Espanol De Credito* v. *Du Pont*, 24 A D 2d 445 [1st Dept.]; *Benedict Corp.* v. *Epstein*, 47 Misc 2d 316 [Sup. Ct., Albany County].)

Stevens, J. P., Eager and Steuer, JJ., concur with Capozzoli, J.; McGivern, J., dissents in opinion.

Orders and judgment reversed, on the law, with $50 costs and disbursements to the appellant, and defendant's motion to dismiss for lack of jurisdiction granted.

Settle order on notice.