**CURRENT TEXTILES CORP., Plaintiff,**

v.

**AVA INDUSTRIES, INC. and Oro Knits, Inc., Defendants.**

No. 84 Civ. 8950 (RWS).

United States District Court,
S.D. New York.

Dec. 3, 1985.

Richard Turyn, New York City, for plaintiff.

Sudler & Barth, (Eric M. Cahalan, New York City, of counsel), for defendants.

OPINION

SWEET, District Judge.

Defendants Ava Industries, Inc. ("Ava") and Oro Knits, Inc. ("Oro") move to dismiss a complaint by Current Textiles Corporation ("Current") against them for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). For the reasons set forth below, the motion will be granted.

Current, a New York corporation, in April, 1984 delivered a quantity of yarn to defendants to be knitted by Oro and finished by Ava in Charlotte, North Carolina. Current contends that due to their joint or several negligence, defendants wasted an excessive amount of yarn during processing, and thereafter delivered defective material to Current's customer in Mississippi. Current seeks $75,000 in damages as a result of the alleged conversion of yarn and negligent processing.

In order to defeat the motion, Current must allege facts to establish that defendants are personally subject to this court's process. A complaint that makes a sufficient jurisdictional showing on its face consequently will defeat a motion to dismiss. *Visual Sciences*, 660 F.2d 56, at 58. Nonetheless, Current must shoulder the burden of establishing jurisdiction over defendants by a preponderance of the evidence. *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

The rule followed in the Second Circuit is that "the amenability of a foreign corporation [or other non-resident] to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press*

*International,* 320 F.2d 219, 223 (2d Cir. 1963) (en banc).

New York Civil Practice Law § 302(a) (McKinney 1972 & Supp. 1984–85) authorizes courts of the state to exert personal jurisdiction over any nondomiciliary that:

1. Transacts any business within the state or contracts anywhere to supply goods or services *in the state;* or

. . . . .

3. commits a tortious act without the state causing injury to person or property within the state ... if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; ...

Jurisdiction does not attach under Section 302(a) unless a defendant has committed an act that falls within the purview of the conduct described in subsections (a)(1)–(4), and plaintiff's cause of action arises out of performance of that act. *McGowan v. Smith,* 52 N.Y.2d 268, 272–73, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981). Current's memorandum in opposition to defendants' motion to dismiss appears to state stating alternative theories of jurisdiction. The first theory, basing jurisdiction under § 302(a)(1), alleges that defendants "transacted" business subject to a contract whose terms gave Current the option to order defendants to supply goods to New York, an agreement that defendants subsequently breached. Current's second theory seeks to base jurisdiction under § 302(a)(3), because defendants' negligence resulted in a commercial tort having a reasonably foreseeable legal effect in New York. Current has failed to meet its jurisdictional burden under both theories.

### Transacting Business § 302(a)(1)

CPLR Section 302(a)(1) has been construed as a "one transaction statute." *George Reiner & Co. Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). Commenting on the scope of § 302(a)(1), the court in *ECC Corporation v. Slater Electric, Inc.,* 336 F.Supp. 148, 152 (E.D.N.Y.1971) remarked:

> [I]f the corporate intention is through personnel of executive substance to come to the state to effect a purposeful and important activity on the corporation's part, and by doing so such personnel significantly advance the making of a corporate contract of importance, that activity and presence suffice as a basis for a later exercise of personal jurisdiction by the State of New York over the foreign corporation with respect to matters that can genuinely be said to arise out of the resultant contract....

The only issue to be resolved under section 302(a)(1) then, is whether defendants purposefully availed themselves of the privilege of conducting activities in New York sufficient to invoke the benefits and protections of New York law. *Reiner, supra,* 41 N.Y.2d at 653, 394 N.Y.S.2d at 847, 363 N.E.2d at 554 (*quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) ).

In order to properly analyze the jurisdictional sufficiency of defendants' purposeful conduct, the court must weigh the defendants' business nexus with New York on a scale that measures the "totality of the circumstances." *Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975). The law of New York also places great weight on the locale where negotiation of a contract occurs. *Dogan v. Harbert Construction Corporation,* 507 F.Supp. 254 (S.D.N.Y.1980). If negotiations take place in New York that "substantially advance," or are "essential" to formation of a business agreement, *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 91 (2d Cir.1975), such activity will constitute a legally sufficient basis for jurisdiction.

It is undisputed that Current's claim arises from the telephone orders which it placed to Ava and Oro to have yarn processed in North Carolina. Neither Ava nor Oro resides or maintains offices or employees in New York state. Defendants admit to only one contact with New York, a business trip by Robert Stark who doubles as president of Oro and vice president of Ava. The precise nature of the New York trip is undisclosed, but Robert Stark maintains that its purpose was not to negotiate the contract in issue. *Cf. McKee Electric Co. v. Rauland-Borg Corporation,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37, 229 N.E.2d 604, 607 (1967) (not every corporate executive who spends time in New York is amenable to service of process) any negotiations relative to the contracts at issue took place in New York. *See Pneuma-Flo Systems, Inc. v. Universal Machinery Corp.,* 454 F.Sup. 858, 866 (S.D.N.Y.1978) (plaintiff's failure to aver that visits of defendant's officials to forum were essential to formation or continuation of contract giving rise to litigation supported determination of lack of personal jurisdiction). Finally, Current has submitted no evidence that the goods in question were not shipped to New York, that it has not been challenged that the defendants do not as a matter of course ship goods into this jurisdiction, that they have no New York bank accounts, nor advertise here.

■ The "totality of the circumstances" demonstrate that Ava and Oro have had negligable contact with this jurisdiction. The contract was initiated and negotiated at Current's behest over the telephone, and did not necessitate visits or consultations in New York with executive personnel of either corporate defendant. While New York based negotiations alone can constitute the transaction of business under section 302(a)(1), *Bialek v. Racal Milgo, Inc.,* 545 F.Supp. 25, 35 (S.D.N.Y.1982), Current has not demonstrated that any contract negotiations occurred in New York, let alone a contact that could be deemed "essential" under the *Lehigh* test.

In general, telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under section 302(a)(1) absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New York State. *Trident Export Corp. v. Palmco Corp.,* No. 81 Civ. 4356 (S.D.N.Y. Dec. 18, 1981); *Concrete Drilling Services, Inc. v. Thomsson Steel Co., Inc.,* 411 F.Supp. 1021, 1023 (S.D.N.Y. 1976). While jurisdiction has rested upon the telephone negotiation of several contracts between the same parties, coupled with discussions in New York between the parties about the contract at issue, *see C.T. Chemicals (USA), Inc. v. Horizons International Inc.,* 106 F.R.D. 518 (S.D.N.Y. 1985), that case involved an out of state defendant telephoning New York to further the negotiations under the contract. Here, Current, the New York plaintiff, seeks to base jurisdiction over Ava and Oro on its own telephone calls to the defendants in North Carolina. Furthermore, even if the telephone calls had been made at the behest of Ava and Oro, it would be doubtful that these calls alone would support jurisdiction, as the existence of a New York business discussion about the contract in question is disputed by the parties, *see Trident Export Corp. v. Palmco Corp., supra,* No. 81 Civ. 4357 (S.D.N.Y. Dec. 18, 1981).

**Commercial Tort § 302(a)(3)**

■ Current's second theory of recovery is based on the allegedly tortious behavior of the defendants. When a commercial tort is alleged, the situs of the injury is where "the critical events associated with the dispute" happen. *Chemical Bank v. World Hockey Association,* 403 F.Supp. 1374, 1380 (S.D.N.Y.1975). Courts have construed the language of CPLR § 302(a)(3) literally to mean that the relevant harm must occur within New York. *See Data Communications, Inc. v. Dirmeyer,* 514 F.Supp. 26, 30 (E.D.N.Y.1981). The mere fact that Current's domicile lies within New York does not necessarily import receipt of legal injury within the state

for jurisdictional purposes. *See Zoellner Corporation v. Tex Metals Co.*, 396 F.2d 300 (2d Cir.1968) (rejecting allegations of injury from conversion of jurisdictionally sufficient); *MIJE Associates v. Halliburton Services*, 552 F.Supp. 418, 420 & n. 5 (S.D.N.Y.1982) (negligence committed wholly outside New York but causing pecuniary injury to New York citizen held insufficient to support jurisdiction); *accord, Fantis Foods, Inc. v. Standard Importing*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980).

Current cites *B.J. McAdams v. Boggs*, 426 F.Supp. 1091 (E.D.Pa.1977), to support its argument that commission of a tort without the state confers federal jurisdiction. *Boggs* is inapposite to the instant case because Pennsylvania's statute, unlike that of New York, converts issues of long-arm jurisdiction into questions of constitutional dimension, empowering state courts to exert jurisdiction "to the fullest extent allowed under the Constitution," 42 Pa.C.S.A. § 5322(b) (West 1981). Second, the agreement at issue in *Boggs* was physically negotiated in the forum state by an individual defendant. Instead of providing support, *Boggs* thus cuts to the quick of Current's allegations of jurisdiction, for the *Boggs* court held that the contacts of the bank, the only foreign corporation involved in *Boggs*, fell below the minimum required to subject it to the state's personal jurisdiction.

Because Current has failed to make a *prima facie* factual showing that defendants' activities bring it within the ambit of §§ 302(a)(1) and (a)(3) of New York's long-arm statute, the defendants' motion to dismiss is granted.

IT IS SO ORDERED.