**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Burk DENNIS, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Gilbert FUENTES, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Terry FOSTER, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Fred CROWLEY and Jeanice Drury Crowley, Defendants.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Ralph E. CLURE, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Larry MAURER, Defendant.**

---

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Francis A. DESARRO, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Mark SILVER, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Marvin PERLMAN, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Richard FORINGER, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Jon WALLIN, Defendant.**

**FIRST CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Gerald FRESONKE, Defendant.**

Nos. 87 Civ. 2959 (RWS) to 87 Civ. 2968 (RWS), 87 Civ. 3005 (RWS) and 87 Civ. 3006 (RWS).

United States District Court, S.D. New York.

Jan. 26, 1988.

Bizar D'Alessandro Shustak & Martin, New York City (Gayle S. Sanders, Adele Taylor–Scott, of counsel), for plaintiff.

Hannoch Weisman, P.C., Roseland, N.J. (William J. Heller, of counsel), Reisch, Clar-

ey, Simone & Gleason, Mineola, N.Y., for defendants.

## OPINION

SWEET, District Judge.

Twelve individual defendants have moved under Rule 12(b)(2), Fed.R.Civ.P., to dismiss the complaints filed against them by plaintiff First City Federal Savings Bank ("First City") for lack of personal jurisdiction. Each has submitted an affidavit as has Richard Gipe ("Gipe"), a broker-dealer who participated in the limited partnership transaction that underlies this case. First City has submitted the affidavits of its president Richard Greenberg and Michael Cash, the president of National Capital Corporation ("National"). Except as noted below, these affidavits do not present any issues of fact. Oral argument was held on November 6, 1987. Upon the facts and conclusions set forth below, the motions are denied.

### Prior Proceedings

On May 1, 1987, First City filed the complaints and mailed the summons and complaints, with acknowledgement of service forms, to the individual defendants. When defendants refused to acknowledge service of the papers, First City retained a process server to serve them in person. Thereafter, by motion returnable September 25, 1987, First City moved for summary judgment and was met by defendants' motions, filed October 9, 1987, to dismiss these twelve actions for lack of personal jurisdiction.

First City's motion has been adjourned pending the disposition of the instant motion.

### Facts

First City is a national banking association with its only offices in New York City. The defendants are limited partners in the Colburn Energy Split Asset Fund, Ltd., a California limited partnership ("CESAF"). Each defendant resides and works in California or, in one case, in Texas. None of the defendants owns any real estate in New York or has any holdings, assets or bank accounts in New York. Certain defendants have visited New York sporadically for matters in no way related to the instant dispute.

CESAF was structured as a tax-advantaged limited partnership investing in oil and gas ventures. The principal promoter and general partner of CESAF was Colburn Energy Corporation ("Colburn Energy") represented by its principal, Charles Colburn ("Colburn"). As the deal was initially presented to potential investors in a private placement memorandum for CESAF, investors had the option of paying for units either in cash or by executing and delivering a promissory note. The payee on that promissory note would have been CESAF, and CESAF would have had the right to use that promissory note as collateral for its own bank loan. The partnership, rather than numerous limited partners, would then have serviced the debt on bank loans obtained to finance CESAF operations, and for this purpose CESAF would invest initially in stable, income-producing wells in order to provide cash flow.

Notwithstanding the private placement memorandum, the financing for CESAF was ultimately achieved under a different structure. In November 1985, a financial broker contacted National, which had a relationship with First City. The broker represented that he had been retained by Colburn Energy to secure financing for individuals who were investing in a limited partnership. Shortly thereafter, the broker came to New York and met with officers of National. He brought financial statements, tax returns and various other financial information on the prospective borrowers, including many of the defendants.

In December 1985, David Young ("Young"), a vice-president of Colburn Energy, came to New York and met with representatives of National to arrange individual loans to defendants and others. Based upon its review of the financial information that it had been provided in November, National rejected certain individuals from consideration for loans, and asked Young to obtain additional financial information, which Young agree to do. National then forwarded to Young, in Virginia,

loan application materials to be completed by the individual defendants.

Gipe, a broker-dealer from California, also travelled to New York to explain CE-SAF to National and First City as the venture was described in the private placement memorandum before any investments had been made by any of the potential limited partners, and before CESAF was formed. After Gipe returned from his visit to New York, he received a package of materials from First City which he forwarded to the individual defendants. The package included a First City Personal Loan Application ("Application"), a First City Supplemental Personal Financial Statement and Agreement ("Financial Statement"), a Borrower's Letter ("Borrower's Letter") addressed to First City, an Assignment and Security Agreement ("Assignment"), a Promissory Note ("Note"), and an Engagement and Authorization Letter ("Engagement Letter") addressed to National.

Each of the defendants signed a Borrower's Letter addressed to First City in New York City which contains a specific request by each of the individual defendants to the Bank for a loan to invest in a limited partnership. The Borrower's Letter provided, in part:

Request for Loan and Payment of Proceeds

The person or persons signing this letter (I) would like to borrow (an amount) from First City Federal Savings Bank ("Bank") for an investment in Colburn Energy Split Asset Fund, Ltd. (the "Partnership"), a limited partnership authorized under the laws of California. Please pay the proceeds of the loan directly to the partnership.

Pursuant to the Borrower's Letter each defendant agreed:

... to furnish the Bank information regarding my financial condition at least once a year or more often when the Bank requests me to. I will inform the Bank of any change in my employment. If a significant portion of my assets is replaced, or if a material change occurs in my financial condition, I will notify the Bank promptly.

In addition, the Borrower's Letter signed by each defendant authorized First City to date the Note on the date that it disbursed the loan proceeds, and contained an agreement whereby each defendant agreed to hold First City harmless and released First City from any and all claims that they had relating to or arising out of their investments.

Each individual defendant filled out and signed the Application which sets forth the name of First City in bold print, as does the Financial Statement. Each defendant marked the space on the Financial Statement indicating he was applying to the Bank as an individual applicant and acknowledged in the Financial Statement that he was making a direct request to the bank for financing:

Because I have asked First City Federal Savings Bank (the "Bank") to grant credit to me or to someone else in reliance on my guarantee, I am supplying you with the following true and complete financial statement.

Each defendant also signed a Note which recited that payment was to be made to First City in New York and provided that the Note would be governed by and construed in accordance with the laws of New York. The Note provided that interest would be computed at "2% above the rate of interest publicly announced by the Bank in New York, New York from time to time as its reference rate" and that due dates were to be calculated by taking into account the day on which banks were authorized to close under New York law.

In addition, each defendant executed an Assignment by which he granted First City a security interest in his limited partnership interest. In the Assignment, each defendant acknowledged that he was a limited partner in CESAF and that delivery of the Assignment to First City in New York was a condition precedent to the individual loan being made. The Assignment provides, in part, as follows:

WHEREAS the assignor is a limited partner in the firm of Colburn Energy Split Asset Fund, Ltd. (the "Partnership"); and

WHEREAS it is a condition precedent to making the loan that the assignor execute and deliver this assignment and security agreement (the "assignment" to the Bank.

Each defendant signed a complete set of the documents and transmitted them to National either directly or through Young. In addition to the loan documents addressed to First City, each defendant also signed an Engagement Letter addressed to National in New York City, requesting National to assist the individual defendants in obtaining the loans and authorizing National to obtain credit information and contact credit references, as follows:

> I (we) request your assistance in acquiring financing for an investment in Colburn Energy Split Asset Fund, Ltd., a California limited partnership. I (we) understand and agree that your fee (5%) of the net loan required will be included in the gross (we are requesting).

> Please allow this letter to serve as my (our) authorization to you to obtain consumer credit reports from consumer credit reporting agencies as part of your credit review process. You are also authorized to contact any references I (we) have furnished to you in order to verify or obtain any additional information you may require.

Each defendant also forwarded signed information release forms which authorized National to obtain information from their credit and financial references.

National received the signed documents from a majority of the defendants in December 1985, and from the remaining two by the end of April 1986. Pursuant to the authorizations received from the defendants, National obtained a credit report from TRW, and later contacted the defendants' credit and financial references. After National completed its review of defendants' applications, it forwarded them to First City which subsequently approved loans directly to the limited partners in the aggregate amount of approximately $750,000.

Pursuant to the terms of the Borrower's Letter that each defendant had signed, all of the loan proceeds were delivered to Colburn Energy, with the exception of approximately 15% of the aggregate amount loaned which was retained in a general partnership account at First City. The limited partners did not make any loan payments, and Colburn Energy made each payment up to the date of default. The first payment was paid from the partnership account at First City. It appears that for another payment, Colburn Energy sent checks to the limited partners with instructions that they send the checks to First City. In another case, Colburn made a note payment directly to First City. First City later declared the CESAF loans in default, and these actions ensued. An investigation by the Securities and Exchange Commission into Colburn and his companies is pending. No partnership distributions have been made, and none of the defendants ever received any of the loan proceeds.

*Conclusions*

■ Personal jurisdiction in this diversity action turns upon the law of the forum. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). First City contends that personal jurisdiction over the defendants exists under Section 302(a)(1) of the New York Civil Practice Law and Rules (McKinney's 1972 & Supp. 1987) ("CPLR"). Section 302(a)(1) permits "a court [to] exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state...." The cause of action must arise from the acts which form the basis for the allegation that the defendant is transacting business in the state. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983).

■ Jurisdiction exists under Section 302(a)(1) if the "totality of the circumstances," *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir.1975), establishes that the defendant "purposefully availed himself of the privilege of conducting activities in New York State." *Current Textiles Corp. v. Ava Industries, Inc.*, 624 F.Supp. 819, 821 (S.D.N.Y.1985); *see*

*Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 261 N.Y. S.2d 8, 18, 209 N.E.2d 68 (1965). Federal due process concerns are satisfied where the defendant's activities constitute purposeful efforts to invoke the benefits and protection of New York law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

It is well-settled that "the mere designation of New York as the site for payment on a promissory note is insufficient to confer jurisdiction over a nonresident defendant." *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 346 (S.D.N.Y.1979); *see Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co.,* 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967). In *Hubbard,* plaintiff sued on a promissory note that had been executed and delivered by the defendant in Phoenix, Arizona but made payable to plaintiff in New York. The note was given in payment for plaintiff's services in obtaining a mortgage commitment from a New York bank to finance the purchase and development of defendant's property in Arizona. Defendant was an Oregon corporation having no place of business in New York. The court held that there was no personal jurisdiction over the defendant under these circumstances.

Although the defendants' reliance on *Hubbard* is understandable, here their connections to New York place this case closer to *Sterling* than to *Hubbard.* In *Hubbard,* the plaintiff was the New York agent of defendant in obtaining financing from a New York bank. It is well-settled that in a suit by an agent against his principal the agent's acts in the forum will not be attributed to the principal for purposes of personal jurisdiction. *See Haar v. Armendoris Corp.,* 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). Here, on the other hand, the bank with which defendants' agent dealt seeks to establish jurisdiction. Moreover, in *Hubbard* as in *Wirth v. Prenyl, S.A.,* 29 A.D.2d 373, 288 N.Y.S.2d 377 (1st Dep't 1968), the only contact with New York related to the promissory note was the fact that the note was made payable in New York.

As the court stated in *Plaza Realty Investors,* 484 F.Supp. at 346, "*Sterling* teaches that a nonresident payor on a promissory note made payable in New York must have engaged in additional activities in New York to be subject to jurisdiction here in an action on the promissory note." Here, in addition to agreeing to perform their payment obligations in New York, the defendants signed additional agreements whereby they authorized a New York agent to solicit and negotiate the loans in New York, agreed to provide updated financial information to a New York bank in New York, and agreed to assign their interests in the limited partnership to the New York bank as a condition precedent to the making of the loan. Having knowingly signed such agreements, the defendants were clearly aware that they were entering into an ongoing transaction with a New York bank for the purpose of obtaining a personal loan to finance a limited partnership investment. Although such financing activity presents a "close question" for personal jurisdiction, *see Sterling,* 510 F.2d at 873, these purposeful acts to obtain the benefits of the competitive New York banking market are sufficient to subject defendants to the process of New York courts.

As to the agency issue, "when the action is between a third party who dealt with the representative of the non-domiciliary in this state, the activities of the representative will be imputed to the non-domiciliary when he requested the performance of those acts in New York...." CPLR § 302(a)(1) (McKinney's) (Supplemental Practice Commentaries 1973); *see also Galgay v. Bulletin Co.,* 504 F.2d 1062 (2d Cir.1974). Here, representatives of the defendants acted in New York on their behalf pursuant to two agency relationships. First, Colburn Energy acted as *de facto* agent for the anticipated limited partners when its representatives came to New York to solicit individual loans for defendants. Second, by executing the Engagement Letter the defendants specifically engaged National to process their financial information and arrange these loans with First City.

In *Stark v. Spitz*, 38 A.D.2d 966, 331 N.Y.S.2d 709 (2d Dep't 1972), plaintiff brought an action in New York to recover on an instrument for the payment of money against a non-domiciliary defendant. The Court found that the non-domiciliary had transacted business in New York where an individual, at the request of that defendant, had solicited plaintiffs in New York for the purpose of having them enter into a business relationship with the defendant, had received instruction from the defendant regarding the transaction, and had delivered one of the documents from the defendant to that plaintiff in New York.

In this case, representatives of Colburn Energy travelled to New York and engaged National to assist in obtaining these loans on behalf of the individual defendants. At the time when the Colburn Energy representative initially approached National to solicit individual loans, he had financial information for all but two of the defendants, for whom information was subsequently submitted. The documents signed by defendants were delivered by Colburn's representatives to National in New York, and were reviewed and processed by National and First City in New York.

 Defendants objection that Colburn Energy acted without their consent is unavailing. An agency relationship may be implied where a principal recognizes and acquiesces in an act done by the agent. *See Matter of Newmark*, 20 B.R. 842 (E.D. N.Y.1982); *Cerp Construction Co. v. J.J. Cleary Inc.*, 59 Misc.2d 489, 299 N.Y.S.2d 560, 563 (Kings Co. 1968), *aff'd*, 31 A.D.2d 784, 298 N.Y.S.2d 469 (2d Dep't 1969) (citing *Industrial Mfrs., Inc. v. Bangor Mills, Inc.*, 283 A.D. 113, 126 N.Y.S.2d 508 (1st Dep't 1953), *aff'd*, 307 N.Y. 746, 121 N.E.2d 552 (1954)). By their execution of the documents presented to them by Gipe, the defendants ratified the activities by Colburn Energy on their behalf vis-a-vis First City. That the financing structure of the deal had departed from the terms of the private placement memorandum does not excuse the defendants' knowing acceptance of a banking relationship with First City. As this Circuit stated in *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 537 (2d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), "Agency is a legal concept which depends on the manifest conduct of the parties, not their intentions or beliefs as to what they have done."

In *Matter of Newmark*, 20 B.R. 842, the Court rejected a debtor's argument that the documents used to secure mortgaged financing (and the misrepresentations contained therein) were prepared and transmitted by a mortgage broker without the debtor's knowledge, and determined that the broker was the defendant's agent in making the misrepresentations. There, the defendant had contacted the broker to enlist his services in soliciting financing, the broker's commission was paid by the debtor's partnership, and the broker prepared and transmitted the mortgage presentation package.

Similarly, these defendants engaged National to solicit these loans from First City, out of which National was paid a commission, and as in *Newmark*, National prepared the loan application packages. In addition, National made the necessary credit reviews and presented defendants' application materials to First City. All of National's activities on behalf of defendants took place in New York. It appears beyond dispute that National acted as their agent in arranging and processing these loans.

The Assignment executed by the defendants lends further weight to their connection with this forum. In *Chemco Int'l Leasing v. Meridian Engineering, Inc.*, 590 F.Supp. 539 (S.D.N.Y.1984), the Court upheld personal jurisdiction over a guarantor of payment obligations to be made in New York, where, as here, delivery of the guarantee in New York was a condition precedent to the effectiveness of several lease assignments. There, the guarantee of payment was executed outside of the state by a nonresident who forwarded it to New York in accordance with the terms of underlying lease assignments. The Court found that the guarantor had purposefully availed himself of the privileges of the laws of the state by signing the guarantee, stating:

We can infer that (the guarantor) was aware that delivery of the guarantee to Chemco (in New York) was a condition to the effectiveness of the lease assignments.... The guarantee provided payments to be made directly to New York. With that knowledge as to the importance of the guarantee, it is not "unreasonable for him to anticipate being haled into court in New York" in the event that (the principal) defaulted on its payment to Chemco.

*Chemco Int'l Leasing,* 590 F.Supp. at 543–44 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). Similarly, these defendants specifically acknowledged, by signing the Assignment, that delivery of the Assignment to First City in New York was a condition precedent to their being granted the loans.

Notwithstanding the fact that place of payment alone cannot support personal jurisdiction, the designation of New York as the place of payment is a significant contact, *Fashion Tanning Co. v. Shutzer Indus., Inc.,* 108 A.D.2d 485, 489 N.Y.S.2d 791 (3d Dep't 1985), as is the fact that the Notes provide that New York law shall govern. *Chemco Int'l Leasing,* 590 F.Supp. at 543; *Income Fund of Boston, Inc. v. F.H. Vahlsing, Inc.,* 49 A.D.2d 724, 372 N.Y.S.2d 658, 659 (1st Dep't 1975). Although First City could have obviated the jurisdictional issue by including a consent to jurisdiction clause in the agreements, *see National Equipment Rental, Ltd. v. Reagin,* 338 F.2d 759, 762 (2d Cir. 1964), no authority has held such an omission against a plaintiff if sufficient jurisdictional elements are present, as they are here.

The constitutional requirement that defendants "purposefully avail themselves of the privilege of conducting activities within the forum state" and "invoke the benefit and protection of its laws," *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1240, has been met here. As the United States Supreme Court stated recently in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), where a defendant:

... has created "continuing obligations" between himself and residents of the forum, (citation omitted), he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

The face of the promissory notes and other documents that the defendants signed contemplate an ongoing relationship with a New York bank that was to be governed and construed in accordance with New York law. Under such circumstances, the defendants could reasonably have anticipated being haled into court in New York. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567.

Finally the defendants note the decision of the Honorable Richard Daronco in *First City National Bank and Trust Company v. Zuckerman,* 682 F.Supp. 182 (S.D.N.Y. 1987). There the Minnesota defendant had "borrowed money from a New York bank, agreed to provide financial information to that bank, agreed to repay the loan in New York, agreed that the note would be governed by New York law, and directed that the money be paid to a third-party." *slip op.* at 2. Judge Daronco concluded that those circumstances fell outside the "close call" of *Sterling.* This case, however, falls on the other side of the line by virtue of the defendants' express authorization to National and their ratification of the activities of Colburn Energy on their behalf, as well as by their execution of the Assignments as conditions to the making of the loans.

The motions of the defendants are denied. Discovery will be completed within sixty (60) days of the date hereof and the pretrial order filed the following Wednesday.

IT IS SO ORDERED.