**FIRST CITY SAVINGS BANK, Plaintiff,**

v.

**Burl A. KEENER, Defendant.**

**No. 87 Civ. 7430 (RWS).**

United States District Court,
S.D. New York.

April 27, 1988.

Bizar D'Alessandro Shustak & Martin, New York City, for plaintiff; Adele Taylor-Scott, Gayle S. Sanders, of counsel.

Debevoise & Plimpton, New York City, for defendant; Robert L. King, Linda M. Ross, of counsel.

Burt, Blee, Hawk & Sutton, Ft. Wayne, Ind., for defendant; Daniel K. Leininger, of counsel.

## OPINION

SWEET, District Judge.

Defendant Burl A. Keener ("Keener") has moved to dismiss the action filed against him by First City Federal Savings Bank ("First City" or the "Bank") for lack of personal jurisdiction pursuant to Rule 12(b)(2), Fed.R.Civ.P. For the reasons set forth below, the motion is granted.

*Facts*

First City is a national banking association with its only offices in New York City. Keener is an independent insurance agent who resides and works in Indiana. He is licensed as an insurance broker in Indiana, Florida, Illinois, and Ohio. Neither he nor his insurance business has an office, a phone listing, a bank account, or any property in New York. He has not been to New York on business for six years.

In late May or early June of 1986, Keener was approached in Fort Wayne, Indiana concerning an investment in Bedford Associates, Ltd. ("Bedford"), a Texas limited partnership organized to acquire, manage and expand a guest room Holiday Inn in Bedford, Texas. The general partner of Bedford was Forum Host, Inc. ("Forum"), a Texas corporation with offices in Dallas, Texas. This solicitation was followed by a mailing of a "Private Placement Memorandum" (the "Memorandum") from Forum and Bedford. The Memorandum described the offering and contained the paperwork necessary for investing. It made no reference to First City whatsoever.

On July 10, 1986, Keener decided to invest in the project. He thus executed the documents contained in the "Subscription Booklet" portion of the Memorandum, following the instructions provided therein. The terms of the purchase opted for by Keener were $1000 cash down and a $37,000 full recourse promissory note to an unnamed bank or other financial institution selected by the General Partner. Thus, Keener made his personal check for $1000 out to Bedford, and signed an enclosed promissory note for $37,000. The note did not specify the payee.

Additionally, the Subscription Agreement required that Keener "execute and deliver to the Direct Lender an authorization letter and agreement (the "Authorization Letter") pursuant to which the Direct Lender will be authorized by the undersigned to pay the proceeds of the Direct Loan to the Partnership." The agreement also stated that "[i]f required by the Direct Lender, the undersigned Partners may be required to secure the payment of its promissory note by pledging to the Direct Lender, all right, title and interest of the undersigned in and to its Unit(s)." Keener signed all the necessary documents and sent them, along with the financing paperwork, to Forum in Dallas.

Later in July, after sending in the initial paperwork, Keener received additional documents from Forum for completion and return. These included a promissory note identical to the one previously executed except that First City was named as payee, a document similar to the Authorization Letter except it was entitled "Borrowers Letter" and it was addressed to First City, an assignment and security agreement in favor of First City, and a personal loan application addressed to First City. Keener completed all the documents, dated them July 10 for consistency, and mailed them all to Forum in Dallas.

These documents contain several references to New York. The Borrowers' letter contained an agreement to provide the Bank in New York with information regarding the borrowers' financial condition on at least an annual basis. It is further stated that the Bank was not responsible for the quality of the investment. The financial statement stated that the borrower is seeking credit directly from the Bank. The Note required payment in New York, provided for computation of interest in New York, and stated that it was to be governed and construed in accordance with New York law. Delivery of the Security Agreement to the Bank in New York was a condition precedent of the investment.

Forum also sent Keener an Engagement and Authorization letter made out to the National Credit Corporation ("National"), a New York corporation that Forum had engaged to aid in obtaining financing for its customers. The letter authorized National to check Keener's credit references.

A representative of Forum acknowledged receipt of all the paperwork in Dallas. Additional personal information was requested of Keener. That request also came from Dallas, and the information was sent to Forum in Dallas.

In early October 1986, Keener decided to invest in an additional unit in Bedford Associates. He contacted Forum and was sent documents similar to those executed for the purchase of the first unit, however this time First City was named on the Supplemental Personal Financial Statement. Keener completed the documents and remitted them to Forum in Dallas. When Keener was informed that additional financial information would be required to complete his application, that request came from a representative of Forum in Dallas.

All of Keener's application materials were reviewed by late fall. They were reviewed first by National in New York at the request of Tom Easley, a representative of Forum who apparently without Keener's knowledge advanced the applications of Keener and twenty-three other potential investors. The documents were then forwarded to the Bank for final approval.

Keener's application was approved soon thereafter. His first direct contact with First City came in December 1986 when he received his first invoice for a loan payment. He sent payments due to the Bank

in New York. Receipt of invoices and remittance of payments was Keener's only direct contact with New York. All previous contacts had been through Dallas.

*Discussion*

A federal court sitting in diversity must apply the law of the forum when determining the existence of personal jurisdiction. *Hoffritz for Cutlery v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). In this case, personal jurisdiction is allegedly premised on section 302(a)(1) of the New York Civil Practice Law & Rules ("CPLR"). That section permits a court to exercise jurisdiction over an individual who personally or through an agent transacts business in the state, if the cause of action arises out of that transaction. The issue here is whether Keener, through the execution of the various financing agreements including the Engagement of National, has transacted business within the state such that traditional notions of fair play would not be offended if this court exercised its long-arm jurisdiction. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

A defendant is amenable to jurisdiction due to the transaction of business within the state if:

> looking at 'the totality of [his] activities within the forum,' purposeful acts have been performed in New York by the foreign [defendant] in relation to the contract, "albeit preliminary or subsequent to its execution." *Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1064 (2d Cir.1974), *quoting Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 15 N.Y.2d 443, 457 & n. 5, 261 N.Y.S.2d 8, 18, 209 N.E.2d 68, 75 (1965), *cert. denied sub nom. Estwing Manufacturing Co., Inc. v. Singer,* 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 (1965).

*Sterling National Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870, 873 (2d Cir.1975).

In *Sterling* the totality of the circumstances dictated that the defendants were amenable to suit in New York. There, promissory notes were payable in New York; the loan proceeds were credited to an account defendant opened at Sterling in New York; the defendant directed that Sterling then transfer the funds to another bank in New York; the defendant was required to maintain an account at Sterling; and a representative of the defendant corporation visited Sterling in New York.

However, New York Courts are reluctant to assert personal jurisdiction over a defendant whose only significant contact with New York is that he executed a promissory note payable there. *See American Recreation Group, Inc. v. Woznicki,* 87 A.D.2d 600, 448 N.Y.S.2d 51 (2d Dep't 1982). The courts have refused to exercise jurisdiction when, for example, a note was executed and delivered in Arizona, but payable in New York and given "for services rendered by plaintiff in obtaining a mortgage commitment from a bank located in New York, to finance the purchase and development of property in Arizona." *Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co.,* 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967). They have also refused to assert jurisdiction when a note was delivered, completed and made payable in New York, and when New York was chosen specifically to accommodate the payee. *Wirth v. Prenyl, S.A.,* 29 A.D.2d 373, 288 N.Y.S.2d 377 (1968).

█ First City asserts that the circumstances in this case are more akin to those in *Sterling* than those under consideration in the New York cases discussed above. It relies in large part on the relationship between Keener and National, deeming National Keener's agent for obtaining financing in New York.

However, National was not Keener's agent, but was engaged by Forum because National had a working relationship with First City. In fact, National has a history of providing First City with credit reports on individuals seeking to invest in a variety of limited partnerships. Keener was merely provided with a document authorizing National to run a check on his credit worthiness at the same time he was presented with a barrage of paperwork, all towards one end: obtaining financing through a

Texas general partnership for the purpose of investing in a Texas limited partnership.

First City has also relied on *First City v. Dennis,* 680 F.Supp. 579 (S.D.N.Y.1988) in which this court determined that it had personal jurisdiction over defendants whose transactional contacts with First City in New York were similar to Keener's. The defendants in *Dennis* received and executed similar promissory notes, borrowers' letters, and security agreements. They also executed an authorization and engagement letter to National. However, that letter differed in one important respect. There, the defendants authorized compensation to National to be deducted from the loan proceeds. Here, no such compensation agreement exists. Thus, if National received any remuneration for its credit check on Keener, it received it from either First City or from Forum.

Additionally, in *Dennis,* at least two representatives of the limited partnership in question traveled to New York to meet with representatives of both First City and National for the purpose of seeking financing and credit arrangements on behalf of their investors. No such local contact on Keener's behalf is alleged in this case.[1]

 While it is true that Keener signed not only a promissory note but a plethora of financial documents, all made out to First City, all the documents were meant to achieve one end: the financing of the Texas investment. None of them were for any purpose independent of the loan, and, absent some catastrophic change in Keener's financial status, none of them would have been operative unless Keener defaulted on the loan.

In sum, the totality of the circumstances dictate that Keener's only time contact with New York was the payment of installments on the promissory note. In such a case, personal jurisdiction will not be exercised.

1. The only somewhat similar circumstances is when Easley on behalf of Forum traveled to New York to meet not with First City people but with a representative of National on behalf of

*Conclusions*

Keener's motion pursuant to Rule 12(b)(2), Fed.R.Civ.P. is granted. The action will be dismissed.

IT IS SO ORDERED.

many investors. This meeting took place several months after Keener had completed his paperwork and unbeknown to him.