Scott C. **SAVIN, Appellee,**

v.

Harry H. **RANIER, Appellant.**

**No. 784, Docket 89–7922.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 31, 1990.

Decided March 6, 1990.

Tom H. Pierce, Versailles, Ky., for appellant.

Anthony C. DeFilippis, Jr., Cohn & Birnbaum, P.C., Hartford, Conn. (Robert B. Shapiro, of counsel), for appellee.

Before OAKES, Chief Judge, and KEARSE and FLETCHER,[1] Circuit Judges.

OAKES, Chief Judge:

Harry H. Ranier appeals an August 11, 1989, default judgment entered against him in the United States District Court for the District of Connecticut, Jose A. Cabranes, Judge, on grounds that the district court lacked personal jurisdiction over him. We find that the district court's exercise of jurisdiction over defendant Ranier in this case was without statutory or constitutional basis, and accordingly reverse the judgment below.

## FACTS

Scott C. Savin, a resident of Connecticut, initiated this action to recover on a promissory note from Ranier, a resident of Kentucky. The note was executed by Ranier in consideration for his receipt of one share in a syndicate that would purchase from Savin a thoroughbred stallion known as "Bet Big." Ranier allegedly was contacted by Savin's agents in New York soon after Bet Big had won a major race. Stating that Savin would soon retire his horse to "stud," the agents asked Ranier to purchase a share in the syndicate, pursuant to which Ranier, along with other syndicate members, would have the right to breed his own mares to the stallion Bet Big.

Ranier purchased a share in the syndicate by placing $10,000 down and executing a note for $75,000 that was payable at 11% interest to Savin in Farmington, Connecticut, over three years. Ranier also signed a syndicate agreement which provided, among other things, that the stallion would be delivered by Savin to New York, where it would be kept unless otherwise determined by a vote of syndicate members, that a named syndicate manager in New York would have all authority and discretion with respect to managing the syndicate and with respect to the keeping, care, maintenance, management, breeding, and supervision of the stallion, and that New York law would govern the syndicate agreement. Ranier alleges that his communications concerning his share in the syndicate were exclusively with the syndicate manager and with Savin's New York agents, and not with Savin himself.

In addition to executing the note, Ranier had two further business dealings with Savin. In 1985, Savin boarded a mare, Chic Belle, at Ranier's farm in Kentucky. Ranier was to have received a commission from the sale of Chic Belle; however, Savin accepted Ranier's claim for lost commissions as payment of a $15,000 installment due from Ranier to Savin under the $75,000 promissory note. Then, in 1986, when Ranier defaulted on his second installment payment of $20,000 due, Savin arranged to have one of his mares bred to Wild Again, owned by Ranier in Kentucky, in lieu of the payment due by Ranier. Ranier made no further payments fulfilling his remaining $40,000 obligation under the note.

On October 27, 1987, Savin initiated this diversity action in the District of Connecticut to recover from Ranier the $40,000 due

---

1. Of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

on the note, plus attorneys' fees. When the mare that Savin bred to Wild Again failed to produce a live foal, he amended his complaint, claiming that $60,000 was still due under the note, since his acceptance of the breeding season to Wild Again in lieu of the $20,000 installment payment was contingent upon the birth of a live foal. In 1989, Ranier moved the district court to dismiss the action for lack of personal jurisdiction over him. In an oral ruling on May 5, 1989, the district court denied the motion. When Ranier failed to appear for a scheduled settlement conference and for a hearing on Savin's motion for default judgment, the district court entered default judgment for Savin. On appeal, Ranier renews his claim that the District of Connecticut lacked personal jurisdiction over him.

## DISCUSSION

■■■ In diversity cases, federal courts must look to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant. *See Arrowsmith v. United Press Int'l,* 320 F.2d 219, 222–25 (2d Cir.1963) (en banc). If jurisdiction is appropriate under the relevant statute, the court must then decide whether exercise of jurisdiction comports with due process. *See id.* at 223. The plaintiff generally has the burden of proof in establishing personal jurisdiction over the defendant. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984).

Here, Savin and the district court relied on Connecticut General Statutes section 52–59b(a)(1) (1989), which permits the exercise of jurisdiction over a nonresident defendant who "[t]ransacts any business within the state." Although no Connecticut case law deals with whether a note payable in Connecticut subjects the nonresident maker to the jurisdiction of its courts, Connecticut courts in similar situations have looked to New York courts for guidance:

The [Connecticut] General Statutes do not define what the phrase "transacts any business" means in the context of

§ 52–59b. We note, however, that in enacting § 52–59b, the legislature used New York Civil Practice Law § 302 (McKinney 1980–81 Sup. [sic]) as a model. We therefore find pertinent the judicial interpretation given to that New York statute.

*Zartolas v. Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179, 180–81 (1981) (citations omitted); *accord Mozes v. Welch,* 638 F.Supp. 215, 223 (D.Conn.1986). New York courts interpreting the comparable provision have declined to exercise jurisdiction where the only contact maintained by the defendant with the forum state was that New York was designated as the site for payment on a promissory note. *See Glass v. Harris,* 687 F.Supp. 906, 908–09 (S.D.N.Y.1988); *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 346 (S.D.N.Y.1979); *Hubbard, Westervelt & Mottelay, Inc. v. Harsh Bldg. Co.,* 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967).

■■■ In this case, Ranier joined a syndicate that was governed by the laws of New York and managed by a New York syndicate manager. In addition, performance under the syndicate agreement was to take place in New York, as the agreement provided that the horse would be in New York so that syndicate members could breed their mares with Bet Big in that state. That Savin originally organized the syndicate or performed duties for the syndicate in Connecticut is irrelevant; Ranier did not purposefully bargain for Savin's performance in Connecticut of any activity concerning the syndicate, and the syndicate agreement does not contemplate or require Savin to perform duties relating to management of the syndicate. *Cf. Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725, 732 (D.Conn.1979) (looking at plaintiff's activities in Connecticut for purposes of obtaining jurisdiction over defendant pursuant to Connecticut General Statutes section 33–411(c)(1) "where the contract in question clearly contemplated and required performance in this state by plaintiff"). Ranier's only purposeful contact with Connecticut was in obtaining financing for his share of the New York business from a Connecticut resident. Yet as the New York cases make

clear, such contact, without more, is insufficient to confer jurisdiction under Connecticut's long-arm statute.

Rather than making straightforward payments on the note to Savin, however, Ranier established additional business relationships with Savin as payment of his obligations under the note. Arguably, the business of the note, at this point, became distinct from the business of the syndicate, and the additional dealings were sufficient to make Ranier "aware that [he was] entering into an ongoing transaction" with a Connecticut business. *First City Fed. Savs. Bank v. Dennis*, 680 F.Supp. 579, 584 (S.D.N.Y.1988). Although these additional contacts make the case a closer call, they are insufficient to confer jurisdiction since the additional business dealings, unlike those in *First City*, were not performed in the forum state. Even though these additional contacts regarding payments on the note constituted transacting business with a Connecticut resident, they did not amount to Ranier's transacting business in Connecticut. Accordingly, we find that the district court, pursuant to Connecticut's long-arm statute, lacked personal jurisdiction over Ranier in this case.

■ Finally, we note that even if there were statutory authority for jurisdiction in this case, exercise of jurisdiction over Ranier would raise due process concerns. Designating Connecticut as the place for payment on the note was not an "act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2L.Ed.2d 1283 (1958). Rather, the place of payment was an unbargained-for convenience for the benefit of the plaintiff. *Compare Wirth v. Prenyl, S.A.*, 29 A.D.2d 373, 375, 288 N.Y.S.2d 377, 379 (1st Dep't 1968) (holding that benefit of New York laws not bargained for where choice of New York as place of payment was to accommodate payee), *with Sterling Nat'l Bank and Trust Co. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873–74 (2d Cir. 1975) (upholding exercise of jurisdiction where maintenance of New York bank account was not merely for accommodation of lender but important part of bargain).

Moreover, simply receiving financing from a Connecticut resident is tantamount to "an individual's contract with an out-of-state party," which *"alone ... [cannot]* automatically establish sufficient minimum contacts in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985). Because neither the business of the syndicate nor of the note had a substantial connection with Connecticut, we find that Ranier's contacts with Connecticut were too "attenuated" to serve as the basis for the district court's exercise of personal jurisdiction over him. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980).

Judgment reversed.