THE CITY OF NEW YORK, Plaintiff,

v.

BOB MOATES' SPORT SHOP, INC.; Coastal Tile & Roofing Company, Inc. d/b/a Coastal Pawn Shop; John Coscia d/b/a John's Gun & Tackle Room; Franklin Rod & Gun Shop, Inc.; Gwinnett Pawn Shop, Inc.; Hot Shots, Inc. d/b/a Hot Shots Jewelry & Pawn; Miller Rod & Gun, Inc.; RJS Enterprises, Inc. d/b/a Dick's Pawn Shop North; Jerry Dale Rooks d/b/a Rooks Sales & Service; TCE of Virginia, Inc. d/b/a Town & Country Pawn Shop; Toccoa Pawn & Variety, Incorporated; Trader World, Inc.; Defendants.

No. 06–CV–6504.

United States District Court, E.D. New York.

Sept. 29, 2008.

Michael Cardozo, Corporation Counsel for the City of New York by Melanie C.T. Ash, Ari Biernoff, Richard J. Costa, Eric Proshansky, Pillsbury Winthrop, Shaw, Pittman LLP by Bryan Robert Dunlap, Kenneth William Taber, for Plaintiff, City of New York.

Law Offices of Richard E. Gardiner by Richard E. Gardiner, for Defendant, Bob Moates' Sport Shop, Inc.

## MEMORANDUM & ORDER APPROVING SETTLEMENT

JACK B. WEINSTEIN, Senior District Judge.

### I. Introduction

This memorandum and order deals with the proposed settlement of the last of a series of civil cases brought by the City of New York to limit violence from the illegal use of guns in the City. As indicated below, the settlement is reasonable. It is approved, effectively terminating this complex litigation in favor of the City of New York.

The City commenced this action in December, 2006 against twelve gun retailers located in Georgia, Ohio, Pennsylvania, South Carolina and Virginia. In a similar action filed in May 2006, the City sued fifteen additional retailers on similar grounds. *See City of New York v. A–1 Jewelry & Pawn, Inc.*, No. 06–CV–2233 (E.D.N.Y.) ("*A–1 Jewelry & Pawn*"). Both actions allege an equitable civil cause of action for public nuisance under New York State law. They are based upon a theory that a relatively small number of out-of-state gun retailers have been illegally and negligently furnishing firearms to prohibited persons that are trafficked into New York City, creating a dangerous public nuisance.

The City alleges that it has evidence of the use of a substantial number of these guns in New York City for serious crimes. Each of

the defendants has sold guns to straw purchasers standing in for the real buyers, a practice that transfers guns through the illegal interstate market to criminals in New York City. Other delicts leading to a public nuisance are alleged. Relief sought by the City is an injunction abating the public nuisance by the appointment of a special master mutually agreed upon by the parties. The special master would monitor the gun retailers to ensure that the retailer did not make illegal sales that contributed to the nuisance in New York City. Monetary penalties would be imposed should defendants violate the judgment.

Most of the twenty-seven defendants in these two separate actions have voluntarily entered into settlement agreements with the City. Some have been voluntarily dismissed. A few have defaulted. Eleven of the original twelve defendants in the instant action have settled.

Trial for Bob Moates' Sport Shop, Inc. ("Moates'"), the only pending case in these two actions, had been scheduled for September 2, 2008. A hearing on a motion for summary judgment, *in limine* motions and a pretrial conference had been scheduled for August 21, 2008. At the hearing, the parties reported that were engaged in settlement discussions and that trial should be adjourned. The terms of this settlement are somewhat similar to the ones involving other defendants in these two actions. [*See* Appendix A].

## II. Background

This is an equitable cause of action involving the safety of many people in the city and the freedom of the defendant-retailers to operate a lawful business in their home state. *See Staples v. United States,* 511 U.S. 600, 610–13, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) (discussing history of legal gun ownership); *NAACP v. AcuSport, Inc.,* 271 F.Supp.2d 435, 526–39 (E.D.N.Y.2003) (detailing public nuisance resulting in New York City from the presence of illegal firearms). Consonant with "[t]he essence of equity jurisdiction ... to do equity and to mould each decree to the necessities of the particular case," the court must satisfy itself as to the

reasonableness of a settlement before it can be approved as a judgment of this court. *Hecht v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 88 L.Ed. 754 (1944) ("The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.").

The factual foundations of the City's claims have been sufficiently established. *See City of New York v. Bob Moates' Sport Shop, Inc.,* No. 06–CV–6504, 2007 WL 906753, 2007 U.S. Dist. LEXIS 21085 (E.D.N Y. Mar. 23, 2007) (facts supporting exercise of subject matter jurisdiction); *City of New York v. Bob Moates' Sport Shop, Inc.,* No. 06–CV–6504, 2008 WL 427964, 2008 U.S. Dist. LEXIS 11699 (E.D.N.Y. Feb. 15, 2008) (personal jurisdiction at motion to dismiss stage); *A–1 Jewelry & Pawn, Inc.,* 252 F.R.D. 130 (E.D.N.Y.2008) (personal jurisdiction on summary judgment); *A–1 Jewelry & Pawn,* 501 F.Supp.2d 369 (E.D.N.Y.2007) (personal jurisdiction at motion to dismiss stage); *A–1 Jewelry & Pawn,* 247 F.R.D. 296 (E.D.N.Y. 2007) (personal and subject matter jurisdiction at motion to dismiss stage, failure to state a cause of action, vagueness, remedy, extraterritoriality, comity, and due process). *See also Johnson v. Bryco Arms,* 304 F.Supp.2d 383 (E.D.N.Y.2004) (claims by victim of gun violence against gun manufacturer, wholesaler, distributor, and retailer); *NAACP,* 271 F.Supp.2d 435 (claims by an organization against gun manufacturers, importers, and distributors); *Hamilton v. Accu–Tek,* 32 F.Supp.2d 47 (E.D.N.Y.1998) (claims by relatives of gun violence victims against gun manufacturers and distributors).

Two legal issues must be addressed before judgment can be entered. First is whether this court has personal jurisdiction over the defendant. Personal jurisdiction was established in deciding the motion to dismiss and summary judgment standards. Second, can the settlements and decrees resulting from default judgment be enforced in light of the Protection of Lawful Commerce in Arms Act, Pub.L. No. 109–92, 119 Stat. 2095 ("PLCAA") and the Supreme Court's recent decision in *District of Columbia v. Heller,*

— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). The PLCAA mandates dismissal of lawsuits against gun retailers unless the retailer has violated a federal or state statute applicable to sale or marketing of firearms. If *Heller* calls into question the constitutionality of those statutes providing a predicate exception to the PLCAA which the City alleges the defendants have violated, the actions must be dismissed and the judgment and settlements cannot be enforced.

## III. Personal Jurisdiction

■ Extensive evidence already produced in this and related cases establishes personal jurisdiction over the defendant. Personal jurisdiction in diversity cases such as this one is determined in accordance with the law of the forum state, subject to federal due process constraints. *See, e.g., Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990). Jurisdiction in this case is asserted under section 302 of the New York Civil Procedure Law and Rules, the New York long arm statute. Section 302(a) provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... commits a tortious act without the state causing injury to person or property within the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y.C.P.L.R. 302(a)(3)(ii).

In order to assert jurisdiction under section 302(a)(3)(ii) the City must show that: (1) the defendant committed a tortious act outside New York; (2) defendant's tortious activity caused injury to person or property inside New York; (3) defendant should have reasonably expected the act to have consequences in the state; and (4) defendant derives substantial revenue from interstate commerce. *See Moates*, 2008 WL 427964, at *7–9.

■ The City has demonstrated for purposes of motions to dismiss and summary judgment that this defendant maintains a long, profitable and continuing commercial relationship affecting people in the State of New York. Personal jurisdiction is sought here not simply to vindicate an individual right or to resolve an individual commercial dispute, but to protect the safety of an entire community.

Unfounded has been defendant's contention that this court's exercise of personal jurisdiction would offend Constitutional Due Process. First, defendant's long—standing contacts with New York—supplying guns over the course of more than a decade to individuals who traffic these guns to New York for criminal purposes—are substantial. *A–1 Jewelry & Pawn*, 247 F.R.D. at 333–39 (discussing due process constraints on personal jurisdiction). Second, case law establishes that fewer contacts with New York are required when, as here, the cumulative weight of evidence of many independent retailers knowingly contributing to a large flow of illegal weapons into New York favors acquisition of personal jurisdiction in this State. *See id.* at 336–38 (discussing cumulative parallel conduct); *id.* at 338–39 (discussing special factors taken into consideration in determining personal jurisdiction in gun cases).

The City's allegations and proof demonstrate the kind of "purposeful availment" that was absent in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Alleged and thus far proven with abundant factual confirmation are facts that the defendant engaged in straw sales, knew, or should have known, that the apparent purchaser was acting on behalf of a prohibited purchaser, and knew, or should have known, that many of the guns it was selling illegally would be trafficked to New York and used in crimes committed in New York City. *See Moates*, 2008 WL 427964, at *2–3 (discussing facts supporting exercise of personal jurisdiction over Moates'). The City has provided an ample factual basis for concluding that this defendant earns substantial revenue from interstate commerce—revenues sufficient to subject it to suit in New York. *Id.*

New York has a strong interest in the safety of its residents and territory from handgun violence as well as in regulating the illegal flow of handguns into its territory. By enacting strong gun control laws to pro-

tect its citizens from gun-related crimes, New York City and State have expressed a special public policy interest in the subject matter of this litigation. *See City of New York v. Beretta U.S.A. Corp.*, 315 F.Supp.2d 256 (E.D.N.Y.2004) (City's suit against gun manufacturers, importers and distributors); *A–1 Jewelry & Pawn, Inc.*, 501 F.Supp.2d 369 (E.D.N.Y.2007) (against gun retailers); *People of the State of New York v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 761 N.Y.S.2d 192 (N.Y.App. Div. 1st Dep't 2003) (State's suit against gun manufacturers, wholesalers, and retailers). The activities which the defendant is alleged to be involved in are illegal and against the public interest in all states and under federal law. *See generally* Bureau of Alcohol, Tobacco, Firearms and Explosives, Commerce in Firearms in the United States: 2000 (2000). Its illegal practices hinder the ability of New York and the federal government to regulate the sale and ownership of firearms in accordance with extant federal, state and local statutory and regulatory provisions and contribute to serious dangers from criminal conduct in the City.

## IV. Subject Matter Jurisdiction and Dismissal Pursuant to the PLCAA

### A. Subject Matter Jurisdiction Based on Diversity

Subject matter jurisdiction based on diversity of the parties has previously been found in this and related cases. *See Moates*, 2007 WL 906753, at *1 ("Based on the number of gun related injuries and crimes alleged in the complaint, the value of the claim, measured by the injury to the City and its residents which would be averted if injunctive relief were granted, meets the jurisdictional amount.").

### B. Subject Matter Jurisdiction as Limited by the PLCAA

■ Defendants have relied upon the PLCAA to argue that the action must be dismissed for lack of subject matter jurisdiction. *See* Protection of Lawful Commerce in Arms Act, Pub.L. No. 109–92, 119 Stat. 2095 (2005) (codified at 15 U.S.C. §§ 7901–7903); *A–1 Jewelry & Pawn*, 247 F.R.D. at 349–53. The PLCAA requires that "[a] qualified civil liability action that is pending on [the date of enactment], shall be immediately dismissed." 15 U.S.C. § 7902(b). With exceptions not here relevant, a qualified civil liability action permitted under the PLCAA is a "civil action . . . brought by any person against a manufacturer or seller of a [firearm that has been shipped or transported in interstate or foreign commerce] . . . for damages, . . . injunctive or declaratory relief, abatement, . . . or other relief, resulting from the criminal or unlawful misuse of [the firearm]." 15 U.S.C. § 7903(5)(A). Another section of the PLCAA preserves from dismissal actions in which a firearms manufacturer or seller "knowingly violated a State or Federal statute applicable to the sale or marketing of [firearms], and the violation was a proximate cause of the harm for which relief is sought." 15 U.S.C. § 7903(5)(A)(iii).

The City has established that the exception in section 7903(5)(A) (iii) applies to the *A–1 Jewelry & Pawn* action and the PLCAA does not require dismissal. *See A–1 Jewelry & Pawn*, 247 F.R.D. at 349–53. The City alleged and proffered evidence supporting the conclusion that defendants' participation in straw purchases violates sections 922, 923 and 924 of title 18 of the United States Code, all of which specifically relate to the sale and marketing of firearms. *See* 18 U.S.C. §§ 922, 923, 924; *A–1 Jewelry & Pawn*, 247 F.R.D. at 349–53. Section 922 prohibits certain conduct relating to the sale, transfer, transport, manufacture, and importation of firearms and ammunition; section 923 governs the licensing of manufacturers, importers and dealers of firearms and ammunition; and section 924 imposes criminal penalties for certain conduct relating to the sale, transfer, transport, manufacture and importation of firearms and ammunition. Also alleged and proven were violations of New York Penal Law section 400.05, a state statute declaring that any unlawfully possessed, transported or disposed handgun is a nuisance. *See* N.Y. Penal Law § 400.05; *A–1 Jewelry & Pawn*, 247 F.R.D. at 352.

If these statutes, which provide the predicate exception under the PLCAA permitting the case to go forward, are unconstitutional under the Second Amendment and *Heller,*

the action must be dismissed and the settlement and judgment cannot be enforced. Defendant cannot violate "a State or Federal statute applicable to the sale or marketing" of firearms if the statute is unconstitutional. *See* 15 U.S.C. § 7903(5)(A)(iii).

In *Heller,* the Supreme Court declared unconstitutional legislation applicable in the District of Columbia, a federal enclave. That legislation effectively outlawed all private ownership of handguns and placed restrictions on the operability of firearms lawfully retained in the home. *See Heller,* — U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637. This ruling has no applicability to the present case. First, New York City and State have not attempted to outlaw ownership of handguns but have sought to regulate them in a rational way by use of civil and criminal police authority. *See, e.g.,* N.Y. Penal Law § 400.05. As all members of the Supreme Court recognized in *Heller,* localities retain power to regulate the ownership and control of weapons. The majority opinion of Justice Scalia recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller,* 128 S.Ct. at 2816. It noted:

> From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816–17 (citations and footnote omitted); *see also id.* at 2792 n. 7 (collecting common law sources documenting restrictions on firearms); *id.* at 2794 n. 8 (collecting state constitutional provisions before and after the adoption of the federal Constitution pertaining to firearms). The minority's position favoring local control of handguns was clear. Justice Stevens's opinion provided an historical analysis on the state and federal limitations placed upon firearms. *Id.* at 2822–47 (Stevens, J., dissenting). Justice Breyer's opinion established that the District of Columbia's law is constitutional even if the majority's historical analysis of the Second Amendment were to be adopted. *Id.* at 2847–70 (Breyer, J., dissenting).

It cannot be concluded that *Heller* places in doubt all state and local control of guns required to protect citizens, particularly in urban communities. Even assuming that *Heller* will ultimately be declared applicable to states through incorporation, such an unlimited extension would arguably constitute a violation of the Ninth and Tenth Amendments. *See* U.S. Const. amend. IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."); U.S. Const. amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.").

To transmutate *Heller* into an inhibition on long standing ancient nuisance powers of the state to control nuisances, the power of the federal government to regulate firearms that flow through the stream of interstate commerce, and the power of the federal judiciary in diversity cases to enforce that state substantive law is almost inconceivable.

## V. Conclusion

This case is not about an individual right to keep and bear arms. It is about gun-retailers' obligation to follow federal and state law applicable to the sale and marketing of firearms, the violation of which causes a public nuisance in a different geographical location through gun trafficking. New York State has long exercised substantive control over nuisance claims. The federal government has enacted a comprehensive scheme to regulate the movement of firearms. Extensive

state and federal control over licensing and marketing of firearms is based on historical precedent. Federal, state and local regulations and municipal use of civil litigation to control gun trafficking permit ownership with restriction and are appropriate under the Second Amendment. Adequate procedures are afforded to individuals by state and federal law respecting Fifth and Fourteenth Amendment due process and other concerns. New York State and City may rely upon their police powers, their scheme of gun control and civil litigation to protect their citizens. This court has subject matter and personal jurisdiction. The settlement is reasonable. It will add to the protection of citizens of New York without unduly inhibiting the defendant's ability to carry out its enterprise lawfully.

SO ORDERED.

### Appendix A

### STIPULATION AND SETTLEMENT AGREEMENT

**WHEREAS,** plaintiff the City of New York (the "City") commenced this action on December 6, 2006 by filing a complaint (the "Complaint") against various defendants, including Bob Moates' Sport Shop, Inc. ("Moates"), in the United States District Court for the Eastern District of New York (the "Court"); and

**WHEREAS,** defendant Moates, a federally licensed firearms dealer with a store located at 10418 Hull Street Road, Midlothian, Virginia, was served with the Complaint on December 7, 2006. and answered the Complaint on March 17, 2008; and

**WHEREAS,** the parties desire to resolve this matter without further litigation, by an agreement that, consistent with Moates' right to sell firearms as permitted by law. implements a collaborative approach between the parties to minimize the possibility that firearms sold by Moates will be illegally possessed in New York City;

**THEREFORE,** in consideration of the mutual promises and covenants set forth below, the parties agree as follows with regard to the above-referenced store operated by defendant Moates:

1. Moates hereby agrees to videotape the point-of-sale of all firearms transactions and agrees to upgrade his existing video system within 90 days of the execution of this agreement to maintain videos of all firearms transactions for a period of six months from the date of transaction to deter illegal purchases and monitor employees. The City agrees to pay for the cost of this video system upgrade, provided, that the City may select the most cost-effective option for such upgrade.

2. Moates agrees to utilize a computerized tracking system, being developed by the Responsible Firearms Retailer Partnership ("RFRP"), a collaborative project of Mayors Against Illegal Guns and Wal–Mart, to log traces, which shall be defined as inquiries from law enforcement agencies seeking to identify the purchaser of a particular fire arm, including request received by the Bureau of Alcohol. Tobacco, Firearms and Explosives ("ATF"). By utilizing this tracking system. Moates will be able to determine if a firearm previously acquired by a customer has been the subject of a trace, and if that customer attempts to purchase another firearm, the sale will be electronically flagged. The City agrees to provide Moates with such a computerized tracking system at no cost to Moates. Moates will have the discretion to proceed with such sales or to stop the sales.

3. For sales flagged by the trace log/alert system detailed in Paragraph 2 above. Moates will require customers to fill out a declaration indicating that they meet the legal requirements to purchase a firearm if Moates proceeds with such sales. Moates shall use a declaration form with text substantially similar to the text contained in the sample form attached to this Stipulation and Settlement Agreement as Exhibit A and, if the sale proceeds, shall retain the declaration for one year.

4. Moates will only accept valid federal or state government-issued picture identification cards as primary identification. To ensure that customers' IDs are not counterfeit and are still valid, and to confirm the age of the ID holder. Moates will also utilize, within 90 days of the execution of this agreement, a commercial ID-checking device (such as the

Integrity; Direct system offered by Aristotle, Inc.) Any such system must not, however, retain information about people making lawful firearms purchases in any way, including by automatically populating a computer database with such information.

5. Moates agrees to post signage to alert customers of their legal responsibilities at the point-of-sale and to inform customers that firearms transactions are videotaped. The signage will be substantially similar to the text contained in the sample form attached to this Stipulation and Settlement Agreement as Exhibit B and Moates may substitute for the last sentence the following: "All firearms transactions are videotaped for security purposes." Moates will also post "Don't Lie for the Other Guy" posters conspicuously in the store.

6. Moates agrees to conduct Virginia Slate Police criminal history checks for all employees who sell or handle firearms, including verifying if possible that no such employees are prohibited under federal or state law from possessing or receiving firearms.

7. Moates agrees to participate in an employee responsibility training program focused on deterring illegal firearms purchasers. The RFRP is creating an internet-based training system based on Wal–Mart's training program. The City agrees to provide this program to Moates, at no cost to Moates, and Moates agrees to use it.

8. Moates agrees to conduct weekly and semi-annual audits of its firearms inventory. The weekly audit will verify that all firearms received during the previous week were properly recorded in Moates' Acquisition and Disposition Record ("A & D Record"); verify that all firearms sold during the previous week were properly recorded in the A & D Record, review ATF Forms 4473 for the previous week's firearms sates to confirm that the portions relating to prohibited purchasers (questions 11A–11K on the present version of the Form 4473) were properly filled out, and compare any rejected Form 4473 against Moates' sales log to look for indications of straw purchases. The semi-annual audit will be a physical inspection of inventory checked against open firearms dispositions. Guidelines will be based on Wal–Mart's existing audit procedures. The City agrees to provide information about these audit procedures to Moates, at no cost to Moates.

9. Moates agrees to prohibit all firearms sales where a required background check results in a "default proceed," A "default proceed" results when a background check has not returned a result within three business days. A sale based on a "default proceed" result is permitted by law.

10. Moates agrees to maintain all firearms that are kept in customer-accessible areas of its stores in locked cases or locked to racks.

11. The RFRP will provide, at its expense, outside auditing services to confirm Moates' maintenance of the sales practices outlined in paragraphs 1 through 10 above. The RFRP and Moates will jointly select a firm to provide such services based on independence and demonstrated capabilities Moates agrees to cooperate with auditing by the firm. The outside firm jointly selected by RFRP and Moates will conduct an audit on an annual basis for a period of three years from the date of execution of this Stipulation and Settlement Agreement. The outside auditing firm shall keep strictly confidential any personal identifying information concerning Moates' customers, including, but not limited to customer names, dates of birth, and addresses of residence, that may be contained in Moates sales records including, but not limited to, ATF Forms 4473 and A & D Records.

12. In consideration of Moates' undertaking to adopt and maintain the sales practices outlined in Paragraphs 1–10 above as verified by the auditing outlined in Paragraph 11 above, the City agrees to dismiss the Complaint with respect to Moates, with prejudice, within ten (10) business days of the date of execution of this Stipulation and Settlement Agreement by both parties.

13. In recognition of the mutual undertakings outlined in this Stipulation and Settlement Agreement, and the parties' cooper-

ative understanding to deter illegal gun possession, the parties agree to refrain from disparaging the other. Statements by the City on its beliefs about Moates' past sales practices (i.e., those practices that formed the basis of the allegations in this action) shall not be construed as disparagement. In addition, the parties may state publicly that Moates has made changes to its business practices and that the City is dismissing the Complaint as a result.

14. The parties agree that this Stipulation and Settlement Agreement may be executed in any number of counterparts, and in that event, each counterpart shall be deemed a complete original and shall be enforceable without reference to any other counterpart.

The parties intending to be legally bound this 17th day of September, 2008, have caused this Stipulation and Settlement Agreement to be executed as follows.

**MICHAEL A. CARDOZO**

Corporation Counsel of the City of New York

Attorney for Plaintiff

100 Church Street, Rm. 20–99

New York, New York 10007

(212)788–1324

By: Eric Proshansky

Assistant Corporation Counsel

/s/Eric Proshansky
Eric Proshansky

**BOB MOATES' SPORT SHOP, INC.**

Bob Moates' Sport Shop, Inc.

10418 Hull Street Road

Midlothian, Virginia 23112

By: Robert C. Moates

President

/s/Robert C. Moates
Robert C. Moates

Exhibit B

# THREE IMPORTANT REMINDERS
# FOR ALL GUN PURCHASERS

## (($)) Follow the Law, Don't Be a Straw

It is illegal to acquire a firearm for another person who is legally barred from buying guns. This practice is called a "straw purchase"

If you unlawfully purchase a firearm for another person, you may be subject to a fine and imprisonment for up to 10 YEARS.

## (($)) Avoid the Crime and the Time!

You are prohibited from purchasing firearms if you:

a. Are underage.
b. Are under indictment or information in any court for a felony or any other crime for which the judge could imprison you for more than one year,
c. Are a convicted felon or have been convicted of any crime for which the judge could have imprisoned you for more than one year,
d. Are a fugitive from justice;
e. Are an unlawful user of or addicted to a controlled substance;
f. Have ever been adjudicated mentally defective or have ever been committed to a mental institution,
g. Have been dishonorably discharged from the military;
h. Are subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner;
i. Have ever been convicted of a misdemeanor crime of domestic violence.
j. Have renounced your citizenship; or
k. Are an alien illegally in the United States.

If you are a prohibited purchaser and you lie and try to buy, you may be subject to a fine and imprisonment for up to 10 YEARS.

## (($)) You're on Camera!

All sales are videotaped and all videotapes are available to law enforcement agencies

*Responsible Firearms Retailer Partnership*
*Purchaser Declaration*

**Instructions:** Please read the following statements and sign *only* if you meet all criteria to legally purchase a firearm.

1) I certify that I am the actual purchaser of the firearm.

- You are the actual buyer if you are purchasing the firearm for yourself or otherwise acquiring the firearm for yourself. You are also the actual buyer if you are legitimately acquiring the firearm as a gift for a third party.

2) I certify that I am not a prohibited purchaser.  I do not meet any of the criteria from the list of prohibited purchasers below.

You are *prohibited* from purchasing firearms if you:

a.   Are underage;
b.   Are under indictment or information in any court for a felony or any other crime for which the judge could imprison you for more than one year;
c.   Are a convicted felon or have been convicted of any crime for which the judge could have imprisoned you for more than one year;
d.   Are a fugitive from justice;
e.   Are an unlawful user of or addicted to a controlled substance;
f.   Have ever been adjudicated mentally defective or have ever been committed to a mental institution;
g.   Have been dishonorably discharged from the military;
h.   Are subject to a court order restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner;
i.   Have ever been convicted of a misdemeanor crime of domestic violence;
j.   Have renounced your citizenship;  or
k.   Are an alien illegally in the United States.

3)  I certify that I meet all criteria to legally purchase a firearm.

Purchaser's Signature ——————————————    Date of Purchase ——————————

Print Name            ——————————————